IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY DONACHY and BRUCE KINLEY, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br>    v.<br><br>MOTION CONTROL INDUSTRIES, DIVISION OF CARLISLE CORPORATION, RETIREMENT PLAN FOR BARGAINING UNIT EMPLOYEES OF MOTION CONTROL INDUSTRIES, DIVISION OF CARLISLE CORPORATION,<br><br>          Defendants. | C.A. No. 07-68 Erie<br>Judge McLaughlin |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

      Plaintiffs, Larry Donachy and Bruce Kinley ("Plaintiffs"), on behalf of themselves and the class certified by this Court's order of August 20, 2007, filed this action challenging a determination issued by Carlisle Corporation Incorporated Pension and Benefits Committee ("Committee") regarding the appropriate calculations of Plaintiffs' retirement benefits. This matter is now before the Court upon cross-motions for summary judgment.

    **I.    BACKGROUND**

      Defendant, Motion Control Industries, actively employed Plaintiffs at a manufacturing facility in Ridgway, Pennsylvania, until January 11, 2002. (Complaint ¶ 3; Answer ¶ 3). On that date, Motion Control closed the Ridgway facility and permanently laid off its employees. (Affidavit of Larry Donachy ("Donachy Aff.") ¶ 3; Affidavit of Bruce Kinley ("Kinley Aff.") ¶ 3). Motion

control continued paying employee wages and benefits through March 16, 2002. (Complaint ¶ 25; Answer ¶ 25).

While employed at Motion Control, Donachy and Kinley participated in the Retirement Plan for Bargaining Unit Employees of Motion Control Industries, Division of Carlisle Corporation ("the Plan"). (Donachy Aff. ¶ 5; Kinley Aff. ¶ 5). The Plan is maintained pursuant to a written document consisting of a master plan document (the "Plan Document"), amended and restated effective January 1, 1997, and a local supplement, amended and restated July 20, 2002 (the "Plan Supplement"). (Complaint ¶ 4; Answer ¶ 4).

The Plan provides for various types of retirement benefits, including, *inter alia*, "Normal Retirement Benefits" and "Deferred Vested Retirement Benefits." (See Plan Document, Exhibit C to Defendants' Concise Statement of Material Facts). Normal Retirement Benefits are available to a participant "whose Vesting Service terminates on or after his Normal Retirement Age," 65, whereas Deferred Vested Retirement Benefits are available to a participant "whose Vesting Service terminates after he attains his Vested Retirement Age and before his Early Retirement Age," provided he satisfies other requirements of the Plan. (Plan Document, §§ 4.1(a); 4.4(a)). It is undisputed that the type of benefits Donachy and Kinley are eligible for, if any, are Deferred Vested Retirement Benefits.

Sections 4.1(b) and 4.4(b) of the Plan Document set forth the calculations for determining monthly retirement benefits. The calculation of Normal Retirement Benefits is determined as follows:

> **Amount.** The monthly amount of normal retirement benefit payable to a Member eligible therefor. . . shall be equal to the Member's Credited Service multiplied by the benefit rate specified in the Supplement..."

(Plan Document, § 4.1(b)). The calculation of Deferred Vested Retirement Benefits is governed by Section 4.4(b):

> **Amount.** A terminated Member's monthly deferred vested retirement benefit shall be an amount computed in the same manner as a normal retirement benefit, determined as set forth in section 4.1(b) above, based on the benefit rate and his Credited Service as of the date his Vesting Service terminates...

(Plan Document, §4.4(b)). Simply stated, a participant's monthly pension amount is determined by multiplying the benefit rate by the number of years of Credited Service earned by the participant. (Plan Document, §§4.1(b); 4.4(b)).

IUE/CWA Local 502, AFL-CIO ("Local 502"), an employee organization, represented the Plaintiffs and Motion Control's other rank-and-file production and maintenance employees in collective bargaining. (Complaint ¶11; Answer ¶11). Local 502 and Motion Control negotiated a series of collective bargaining agreements covering the employees of the Ridgway facility, including the most recent, effective by its terms from July 20, 2000 through June 27, 2003 (the "2000 Agreement"). Relevant to the issue of pension benefits, the 2000 Agreement contained the following provision setting forth certain increases to the benefit rate multiplier for Normal Retirement Benefits:

> **Section 4.1 (b) of the Plan:** The monthly amount of normal retirement benefit payable to a Member eligible therefor under section 4.1(a) of the Plan and whose Vesting Service terminates on or after July 20, 2000 shall be equal to the product of the amount shown in the chart below, depending upon the date of the Member's retirement, multiplied by the total period of the Member's Credited Service. The chart is as follows:
>
> | Date of Retirement | Monthly Retirement Benefit Per Year of Credited Service |
> |---|---|
> | July 20, 2000 through June 30, 2001 | Twenty-nine dollars ($29.00) |
> | July 20, 2001 through June 30, 2002 | Thirty dollars ($30.00) |
> | On or after July 20, 2002 | Thirty-one dollars ($31.00) |

(See Plan Supplement, Paragraph (l)).

The concluding clause of Paragraph (l) of the Plan Supplement contains additional instructions relative to Deferred Vested Retirement Benefits:

> **Increases in Retirement Benefits.** Notwithstanding the foregoing, if a Member retires on or after July 20, 2000 and before July 1, 2002 with normal, early, or disability benefits commencing during such interval, upon attaining each subsequent July 1 during such interval after his benefit commencement, he shall be entitled to an increased monthly benefit recomputed based on the rate as in effect on each such July 1 as shown in the above chart. Such increases shall not apply to the deferred vested retirement benefits under section 4.4.

(Id.)

On August 25, 2004, Donachy and Kinley filed an action in this Court seeking a declaration that they were entitled to have their pensions calculated with the $31.00 per month multiplier rather than the $30.00 per month multiplier. On December 21, 2005, this Court dismissed that case on the grounds that Plaintiffs had failed to exhaust their administrative remedies under the Plan prior to commencing the lawsuit. See Donachy v. Motion Control Industries, Civil Action No. 1:04-cv-200245-SJM, Dkt. #26. Plaintiffs voluntarily dismissed a subsequent appeal after agreeing upon a process whereby they would submit their claim to the Plan's Committee for administrative review and determination. (Complaint ¶ 35; Answer ¶ 35).

In their letter to the Plan Committee, Plaintiffs argued that the Plan gives an employee credit for a full year of Vesting Service for any calender year in which the employee "has at least 83 1/3 'Hours of Service.'" (Plan Document, §3.5(c)). The Plan defines "Hours of Service" to include hours worked by the employee as well as hours paid to the employee for, *inter alia*, vacation, holidays, sickness or disability, and involuntary layoff. (Plan Document, § 3.4). Therefore, Plaintiffs asserted that they had earned an entire year of Vesting Service for 2002 because they were entitled to receive "190 [Hours of Service] for each month" on which they were involuntarily laid off pursuant to the Plan. (Plan Supplement, § g; Plan Document, § 3.4 (c)). Alternately, they contended that they had received WARN Act pay and/or vacation and holiday pay for a sufficient period of time after being laid off to have earned them a full year of Vesting Service for 2002.

On September 19, 2006, the Committee issued a six page analysis and determination wherein they determined that Plaintiffs were not entitled to have their pensions calculated with the $31.00 per month multiplier. The Committee rejected Plaintiffs' position that the date on which their Vesting Service terminated could be extended by earning additional "Hours of Service" thereafter and issued the following determination:

> Based upon the Committee's analysis, and the information you have provided, if Mr. Donachy and Mr. Kinley are eligible for deferred Vested Retirement Benefits at all, the Benefit Rate to which they would be entitled is $30.00.

(Id. at p.5). Plaintiffs filed the instant action on April 10, 2007, challenging the Committee's determination.

## II. STANDARD FOR REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all55 reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

## III. ANALYSIS

This action is governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*. ERISA Section 502(a)(1)(B) permits a participant in an eligible pension plan to bring a civil action to recover pension benefits, to enforce rights under the terms of the plan, or to "clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §§ 1132(a)(1)(B). Here, Plaintiffs are seeking a declaration that they are entitled to have their deferred vested retirement benefits calculated using the $31.00 multiplier.

ERISA does not specify the standard of review that a trial court should apply in an action brought pursuant to Section 502(a)(1)(B). In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989), the United States Supreme Court held that the default standard of review in such actions is *de novo* unless the plan documents give the administrator discretionary authority to determine eligibility or to construe the terms of the plan. Id. at 115. Where the plan vests the administrator with such discretionary authority, the court instead reviews the administrator's decision to determine whether it was "arbitrary and capricious" and will reverse only where it is clearly unsupported by the evidence or where the administrator failed to comply with the procedures required by the plan. Vitale v. Latrobe Area Hosp., 420 F.3d 278, 281-82 (3rd Cir. 2005); Rendulic v. Kaiser Aluminum & Chemical Corp., 166 F.Supp.2d 326, 333 (W.D. Pa. 2001). A court must uphold an administrator's interpretation of a plan, even if the court disagrees with it, so long as it is "rationally related to a valid plan purpose and is not contrary to the plain language of the plan." Dewitt v. Penn-Del Directory Co., 106 F.3d 514, 520 (3rd Cir. 1997).

The parties agree that the Plan Documents invest the Plan Committee with discretion to interpret the plan. (See Plan Document, §§ 7.1-7.3). As such, both sides acknowledge that the arbitrary and capricious standard of review applies. (Brief in Support of Plaintiffs' Motion for Summary Judgment, p. 8; Brief in Support of Defendant's Cross Motion for Summary Judgment, p. 8). Plaintiffs contend, however, that this standard should be applied with "heightened scrutiny" because the Plan Committee labored under a conflict of interest as demonstrated by their "evident partiality" towards Motion Control. (Plaintiffs' Brief in Support, p. 9).

In certain cases, courts have applied the arbitrary and capricious standard with "heightened scrutiny" where a fiduciary is found to have a conflict of interest, such as "when an insurance company is both plan administrator and funder." Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387 (3rd Cir. 2000). Where a conflict of interest potentially exists, courts "have adopted a 'sliding scale' standard of review" whereby the deference given to the plan administrator is reduced in accordance with the level of apparent conflict. Post v. Hartford Insurance Company, 501 F.3d 154, 161 (3rd Cir. 2007). Where the level of conflict is slight, the Court applies a traditional "arbitrary and capricious" standard of review. However, where the potential for conflict is high, the plan administrator's discretion is largely curtailed. Id.

In discussing situations where heightened scrutiny might apply, the court in Pinto held that a "conflict of interest" typically arises where an insurance company both funds and administrates a plan because of the incentive for the insurance company to withhold benefits that would otherwise be available as profits. Pinto, 214 F.3d at 388. The court "specifically distinguished insurance companies that both administer and fund plans from employers who perform those roles" because the employer generally "incurs no direct expense as a result of the allowance of benefits, nor does it benefit directly from the denial or discontinuation of benefits." Id. (quoting Abnathya v. Hoffmann-LaRoche, Inc., 2 F.3d 40, 45 (3rd Cir. 1993)). The Third Circuit has generally refrained from applying heightened scrutiny to typical employer-funded ERISA benefits plans where the employer, rather than an insurer, acts as the fiduciary. See, e.g., Vitale, 420 F.3d at 282-83; Pinto, 214 F.3d at 383; Abnathya, 2 F.3d at 45.

Plaintiffs do not contend that the Plan Committee labored under the type of fiduciary conflict of interest described in the cases above. Rather, they suggest that heightened scrutiny should apply because of "the Committee's evident partiality towards the position originally espoused by Motion Control" as evidenced by the fact that "the Committee has adopted as its own the position initially set forth by Motion Control." (Plaintiffs' Brief in Support, p. 9). Essentially, Plaintiffs' argument appears to be that the Committee "lacked neutrality" because of the Committee's failure

7

to have adopted their position. In every case the plan administrator will be required to adopt one position and reject another. An unfavorable ruling, without some independent evidence of a conflict of interest, will not trigger the heightened scrutiny analysis. Consequently, we review the Plan Committee's decision under the arbitrary and capricious standard.[1]

The fundamental issue, therefore, is whether the Plan Committee's decision that Plaintiffs' Vesting Service terminated on January 11, 2002, was arbitrary and capricious. Plaintiffs assert that various provisions contained in the Plan allow them to claim Vesting Service for the entire 2002 calender year, extending the "date [their] Vesting Service terminates" past the July 1, 2002 date on which the $31 multiplier became effective. The Committee rejected this argument with the following analysis:

> On January 11, 2002, the Ridgway facility was closed and the employment of Mr. Donachy and Mr. Kinley was terminated. This is the date upon which Mr. Donachy's and Mr. Kinley's amount of Vesting Service became fixed and determinable. Accordingly, this is the date upon which their Vesting Service terminated. This conclusion is dictated by the plain language of the Plan Documents.
>
> Vesting Service is "used to determine…[an Employee's] eligibility for retirement benefits…[a]n Employee shall receive credit for Vesting Service for his period of employment by the Employer and Affiliates determined in accordance with uniform and nondiscriminatory standards and policies adopted by the Committee." (Plan Documents, §3.5). In this case, Mr. Donachy's and Mr. Kinley's period of employment terminated on January 11, 2002. That is the date upon which they were terminated as employees of Motion Control and that is the date upon which the amount of Vesting Service to which they are entitled became fixed.
>
> \* \* \* \* \* \* \*
>
> Regardless of the methods by which an employee may accrue years of Vesting Service, the amount of years of Vesting Service amassed by an employee does not affect the date upon which his or her Vesting Service terminates. As to Mr. Donachy and Mr. Kinley, their Vesting Service necessarily terminated when their

---

[1] We note, however, that we would reach the same conclusion as to the reasonableness of the Plan Committee's construction of the Plan even if we were to review their decision with heightened scrutiny.

> employment terminated because their Vesting Service was fixed and determinable as of that date.
>
> \* \* \* \* \* \* \*
>
> Your letter indicates that the amount of a Member's accrued Vesting Service affect the amount of that Member's retirement benefit. This is contrary to the definitions of Vesting Service and Credited Service. As quoted above, Vesting Service is used to determine an employee's **eligibility** for retirement benefits. (Plan Documents § 3.6). If the date on which an employee's Vesting Service terminated was dependant on the amount of Vesting Service that the employee had amassed, then the employees with an identical amount of Credited Service, whose employment terminated on the same day and who are eligible for the same type of retirement benefit, would receive different amounts based solely on the amount of Vesting Service they had accrued. This is contrary to the definitions of Vesting Service and Credited Service and is in direct contravention to the language and the intended purposes of the Plan Documents.

(Defendant's Concise Statement of Facts, Exhibit B, pp. 2-5).

After reviewing the Plan Documents, the Plaintiffs' position and the Committee's response thereto, we find the Committee's interpretation of the plan to be "rationally related to a valid plan purpose and [] not contrary to the plain language of the plan." Dewitt, 106 F.3d at 520. As noted by the Committee, the Plan Document utilizes Vested Service to determine only an employee's eligibility for retirement benefits. See Plan Document § 3.5 ("The term 'Vesting Service' . . . is used to determine . . . [an employee's] eligibility for retirement benefits hereunder."). The Plan Documents look to Credited Service rather Vested Service to determine the amount of retirement benefit that an employee is entitled to. See Plan Document § 3.6 ("The term 'Credited Service' is used to determine the amount of a Member's benefit."). Although the Plan Document utilizes the date that an employee's Vesting Service terminates to determine the benefit rate applicable to his calculation, the Committee's determination that an employee's Vesting Service necessarily terminates upon the termination of his employment is far from an unreasonable construction of the Plan. Thus, under the applicable standard of review, it must be upheld. Abnathya, 2 F.3d at 45 ("[T]he district court may overturn a decision of the Plan administrator only if it is 'without reason,

unsupported by substantial evidence or erroneous as a matter of law.'") (quoting Adamo v. Anchor Hocking Corp., 720 F.Supp. 491, 500 (W.D. Pa.1989)).

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED and Plaintiffs' Motion for Summary Judgment is DENIED.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY DONACHY and BRUCE KINLEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> MOTION CONTROL INDUSTRIES, DIVISION OF CARLISLE CORPORATION, RETIREMENT PLAN FOR BARGAINING UNIT EMPLOYEES OF MOTION CONTROL INDUSTRIES, DIVISION OF CARLISLE CORPORATION, <br><br> Defendants. | C.A. No. 07-68 Erie <br> Judge McLaughlin |

## ORDER

AND NOW, this 20th day of August, 2008, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is GRANTED and Plaintiffs' Motion for Summary Judgment is DENIED. Judgment is entered in favor of Defendants and against Plaintiffs.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___